Good morning. Welcome to the Ninth Circuit. Thank you all for coming. We have a couple cases submitted on the briefs today. Jimenez-Martinez v. Bondi, 24-3313 is submitted. Sanchez-Pimentel v. Bondi, 24-6825 is submitted. And we'll hear the other cases in the order in which they appear on the calendar. The first is United States v. Butler, 24-4332. Each side will have ten minutes. Daniel Kaplan Thank you, Your Honor. Good morning. May it please the Court. I'm Daniel Kaplan. I'm appearing for the appellant, Andrew Lee Butler. I will watch the clock, try to save about two minutes for my rebuttal. The lead issue in this appeal deals with Guideline 2G1.3B3, the computer use enhancement, which applies when a computer is used to entice, et cetera, the minor to engage in prohibited sexual activity. In the Guidelines addendum that set out the reason for amendment, the Commission explained that the commentary to this guideline, which purported to define the term minor to include an adult undercover agent who pretends to be a minor, the purpose of that commentary addition was to expand, their word, expand the definition of minor to cover undercover agents in light of the increasing use of undercover sting investigations of the type that was employed in this case. In other words, the Commission itself, the horse's mouth, so to speak, said this was a use of a commentary, not the guideline, but the commentary to the guideline to expand the definition of a guideline for policy reason. Not to clarify, not to explain, but to enact a policy related to sting investigations. So we don't look at the commentary at all if we think the guideline itself is clear, right? Exactly. And why wouldn't the minor have to refer to the minor that's in the underlying crime, which here is an undercover agent? Well, because the plain meaning of the minor excludes an adult. And in this case, there was no minor. The minor didn't exist. Your client was convicted of attempt. And why doesn't that change things here? Your client was clearly attempting to entice a minor. Yes, Your Honor, but the... It's a mistake of fact on the part of your client that the agent was not a minor, but he certainly was going to make every effort to entice this minor. That's consistent with the jury's verdict, certainly. But we're not talking about the application of the statute here. We are not challenging the application of the statute. We are challenging the application of this guidelines enhancement. Yeah, but why do we even need the guideline if your client was convicted of attempting to entice a minor? Because this guideline was used to enhance the applicable range under the sentencing guidelines and led to an increase in his sentence. Right, but why would we even have to look at the commentary? Well, because the guideline using the term the minor is imposing a requirement not on guilt of the crime, again, to stress that, not on guilt of the crime, but on the application of this enhancement. You don't even get to the application of this guideline until you have guilt of the underlying crime. So when we haven't challenged that, we understand there's case law that states that this type of sting investigation qualifies guilt under the statute. But in cases like Simon, the on-bank Supreme Court opinion in Simon, which is cited in the briefs, the argument was made that, well, if this underlying statute applies, then the guideline must apply too. And the on-bank court said, no, that's not how our interpretation of guidelines work. We interpret the guideline on its own merits, on its own language. So again, having been convicted of this and getting to the stage of sentencing and deciding the fine points of how the guideline ranges to be set, the Court looks to the language of that guideline. And there are a number of cases in this Court which state that when the Commission does what the Commission, again, expressly stated it was doing here, which was expanding the scope of a guideline for policy reasons, it is acting unlawfully. And one prominent case, of course, is Castillo, in which the Commission added a commentary which expanded a guideline to apply to inchoate versions of a certain offense. And in Castillo, the Court said you can't expand the scope of a definition of a guideline in the commentary. And there are very important constitutional reasons for that. The balance of powers among the branches of government requires that certain constraints upon the Commission's powers must be observed. Guidelines themselves are statutorily required to be submitted to Congress for six months for Congress to accept or reject, and that they go through the notice and comment rulemaking procedure. I'm a little confused how you're using Castillo, because Castillo thought that, as I read it, that the guideline was clear. It wasn't really that there was a problem with the commentary as I understood it, but just so much that the commentary was irrelevant because they thought the guideline was unambiguously different. And the same is true here. In this case, the guideline refers to the use of a computer to entice the minor. The minor, the term minor, has a clear meaning. But that's, okay, so that's a different argument. I mean, we may or may not agree with you, but you could come in and just say, we don't have, like, you came in and started talking about the commentary. If the guideline is clear that you win, we are still not talking about the commentary, right? Well the only, I mean, well, I talked about the commentary because the commentary shows the Commission acknowledging a fact about the guideline itself. Another thing this Court said in Castillo is when the Commission uses a commentary to purport to expand the guideline, the Commission is thereby telegraphing its understanding that the guideline on its own language doesn't cover that. So, in other words, in Castillo- Well, here, is it that, I don't know if it's really analogous, though. Here, it seems like what I thought the commentary was doing was expanding on the commentary. Like, it wasn't exactly, we had one interpretation of the guideline, then they say, we think our interpretation is too narrow, we're going to give you a broader interpretation. But they never, I mean, it's sort of a truth of the matter, what kind of, what is law kind of question about whether the guideline meant that all along. But it's more the commentary just correcting itself, right? Well, I wouldn't interpret it that way. I think what the commentary purports to do is to expand the scope of the term, the minor, beyond its plain language. And, of course, the plain language is the default interpretation of the guideline itself. And the Supreme Court in Kaiser, which this Court applied to guidelines in Castillo, said if the language of, in this case, a guideline, is clear on its plain language, that's the law, and that's the end of the story, period. The commentary can't come in and broaden that, can't lawfully do that. But if the commentary, sorry, if the guideline is not clear, why wouldn't we just look at the current commentary to help us interpret it? If the guideline was ambiguous under the analysis of Kaiser, Castillo, et cetera, then it could be valid to try to clarify that with a commentary. And if that were what happened here, then my side of this argument would be in some trouble. But that's not what happened here. The Commission itself said they weren't clarifying the meaning of minor, they were expanding it for policy reasons. Why doesn't this argument also apply to the statute? Why aren't you here arguing that your client can't be convicted of enticing a minor? Well, this Court has put that issue aside, and guidelines are subject to many separate, different legal principles. Yeah, but I don't really understand. If your client is convicted, then what does he get sentenced, what's the endgame? If you prevail, we knock out the guideline? It would be, the sentence would be vacated, and he would be presumably remanded for resentencing without the application of that enhancement. I would like to save my time for rebuttal. Thank you. May it please the Court. Good morning, Your Honors. My name is William Voigt. I'm an AUSA from here in Phoenix on behalf of the United States. The District Court did not err in applying the computer use enhancement to Butler's conviction for attempting to entice Sadie, a fictional minor, into illegal sexual activity. Butler's burden to reverse the District Court is to show, not that there's a reasonable argument here, but the opposite, that the language is so unambiguous, you can't even look at commentary that for over 20 years has made clear that it does apply in this context. We don't think he shoulders that burden. We think you can affirm just on the plain language, but— I think today, I mean, I think he's making two arguments. One argument is, it's so clear that it just doesn't mean an undercover agent who's an adult. But his other argument is, it's not clear, so we have to look at the commentary, and part of looking at the commentary is looking at the history of the commentary and seeing this expansion. So do you have a case that tells us we shouldn't do that? Well, I think the first step is definitely look at the language of the guideline. Is it unambiguous? If it's unambiguous in the government's favor, then you affirm. If it's unambiguous in the defendant's favor, then you reverse. If you see reasonable arguments on both sides such that it's ambiguous, then you look at the commentary, and the commentary clearly says a minor includes a fictional minor that is being portrayed by law enforcement. So if you get to the commentary, the government will— But there is also this history of the commentary that used to be narrower, talks about expanding for policy reasons, and then—or for whatever, you may have a different argument about what the reason was—but was narrower and then expanded. So do you have a case that tells us we don't look at the history of the commentary? I think you can look at the history. I think Justice Kagan and Kaiser said that when you're looking at the guideline, you look at text, context, history, purpose. It's a fulsome analysis for purposes of step one. Just to address my colleague's note about that expand, that expand does not say it's expanding the guideline. It says it's expanding the definition in the commentary. And that just begs the question, is it expanding the definition to change the guideline, or is it expanding the definition to clarify it? I think if the commission were looking at a landscape where courts hadn't been applying the guideline in this context, it would be a stronger argument that it's relevant. But the Morrell case applies it in the context of attempt before that. The commission said that it was doing this because practitioners were confused. And that's the reason why you would clarify something. So is there any evidence that—or can you cite a case that precedes the commentary that indicated that there was confusion or that sentencing guidelines were not being applied to fictitious minors, to attempts to entice fictitious minors? The only case I found, which is not directly on point, but is the Morrell case from the 11th Circuit, which was in a case about whether or not it applied in the context of attempt. And my colleague's response to that is it was really more about whether that was direct contact or indirect contact. But I think it applied in the context of an attempt case, which is what we're talking about here. And that's what I would say. The only case that I'm aware of pre that commentary is one that's consistent with the government's position in the commentary that was later adopted. I don't see any reference in the commentary to cases or, you know, that would indicate there was confusion or conflicts between district courts or circuit courts over whether it applied to an attempt to entice a fictitious minor. That's right. I think there was reference at one point in the history of the guidelines, not legislative history, but to that there were some calls to the commission's line expressing questions about it. And this was, of course, part of a broader process of enacting the Sexual Predators Act, which directed the commission to create the computer use enhancement, which is what it had did. And as it said in some of the legislative materials that we cited from the commission, it was this multiyear process of refining and looking at it. So I think that's what was really going on here. I would note that the Sexual Predators Act is relevant because if the guideline doesn't reach this conduct, it's not consistent with what Congress told the commission to do. The Sexual Predators Act, Section 503, directed the commission to create an enhancement for the defendant used a computer with the intent to persuade, induce, entice, et cetera. It's focusing on the defendant's intent, which is why it applies in the context of attempt cases. Can I go back to your answer about how it was the commentary just expanding on the commentary? I mean, don't we think of the commentary as telling us what the guideline means? So it's like at one point we had a meaning of the guideline and then we get another one. And is it the truth of what the guideline means? I mean, what is the commentary supposed to be telling us? I think the goal of the commentary is to clarify what the guideline means. And I think that things in the commentary are expanded or contracted to be sure that people are sometimes to resolve circuit splits, sometimes just to try to head off circuit splits. So I think that's why the commentary said it expanded the definition in the commentary. But I do not read from that, and I don't think it's reasonable to conclude from that, that it was changing the guideline itself. If they wanted to change the guideline itself, they would have changed the guideline. They didn't. They left it as it was. But they're changing how we're supposed to interpret the guideline. Well, I would say that they were clarifying the way that the guideline, that's the way I read that, is that they were clarifying what the guideline says in order to avoid unnecessary litigation, which is their statutory directive from Congress. I want to take my colleagues' sort of frontline argument head on, however, which is that if you look at the word minor in isolation, that means only a real live person who's under the age of 18, which the government would respectfully disagree with. There's nothing about a fictitious minor, and we cited many cases in many contexts in which the guidelines refer to a minor, and it includes a fictional minor like Sadie. I don't think, if the defendant was not thought of as communicating or attempting to entice a minor, not only would the guideline not apply, but the statute wouldn't apply. If he was attempting to entice an adult, he wouldn't have committed a crime. I do think, as Judge Bybee talked about, you should look at your case in Meek, which is the case in which this court rejected a virtually identical argument about the statute. I agree with my colleague that that doesn't control the guideline, but it substantially informs it. I understand the defendant was arrested at the airport. Yes, Your Honor. But change the facts a bit, and he actually goes to a prearranged motel room, and the adult male, and he says, wait a minute, I thought I was dealing with a 13-year-old girl. Would the enhancement apply? I think so. I think that the enhancement will apply based on his use of the computer, so presumably in the background he would have used a computer to set this up. But if you have the facts that establish the computer use, and he is engaging in the enticement, which preceded going into that room with the intent to entice the minor, then yes, I think it would apply in those circumstances. What's the government's position on the supervised release conditions? We don't believe it's plain error. We do believe that the defendant has waived this or invited any error by relying on them in order to get a lower sentence and only challenging them later and refusing the district court's specific directive to make a specific argument, which I don't know what the district court is supposed to do. But if that waiver doesn't apply, then with the exception of Condition 16, we don't believe there's plain error. There's no case that on any of the many arguments he makes that establishes that it's error, and that's the high standard he would have to meet for those. So the defendant couldn't go to a football game? If you're referring to Condition 16, which is where children are likely to be, we concede that that is inconsistent with the court's decision in Guerrero. Couldn't have a cell phone? I don't know if he could have a cell phone. I think that the question of whether or not the cell phone has software installed on it that would prevent it from, say, accessing child sex abuse material, he could probably have a burner phone, which wouldn't be able to access that material. So it would depend on the nature of the cell phone. But I did just want to make, if I may return briefly to the first argument, I do want to make the point that in Meek, this court used the language that you see in the guideline to talk about a fictional minor. In that particular case, the defendant was communicating with an undercover law enforcement officer. They had arranged to meet up at a local school. And this court said the defendant's travel to meet the minor at a local school was something that marked his conduct as criminal. Sorry, can I go back to the supervised release? My understanding, I'm not sure if I have the case off the top of my head, I think it's called Henderson, is that the Supreme Court has said you can have plain error for the first time in the first appeal. You don't actually need a case that already said it. So it seems like your argument was, we don't have a case that tells us these are totally improper unconstitutional conditions in the computer use conditions. But what if the, I mean, I think your opponent is saying, but there's no case that ever said this is OK and this is unconstitutional. So can you respond to that first and then I have a follow up? That's a fair refinement of an overbroad statement that I made. If it is so clear from underlying principles that something is illegal or a violation of the law, you can have plain error on those circumstances. But that's a very high burden to be able to surmount. And I think in this context, when you look, dig into each of the arguments he makes, there isn't a case that clearly says it's improper to have this. I mean, even for like full bans on Internet access, with the exception of pre-approval by the probation, I see my time has expired. Yeah, no, I'd like to ask, though. So it seems like the cases I could find that were otherwise complete bans were all but with the approval of a probation officer. So if we thought that that additional point was needed to say what the approval of a probation officer would be in the same situation as 16, where we should be sending that back to clarify? The Condition 17 in this case... 17, the one with the minors that you've conceded. Right. Well, Condition 16 does need to be fixed for the likely to be rather than primarily used by. But Condition 17, which is the pre-approval requirement, says you must not access the Internet except for reasons approved in advance by the probation officer. So the conditions here... But 14, it's very confusing whether that 14 is a bigger ban, I think. I think what 14 does is it says you can't possess or use particular devices that could access child sex abuse material. But even 14 says, if Internet access is approved by the probation officer, and then it goes on to explain... Okay, well, if that's your reading, so is there any problem with us asking the district court to just clarify that? If we think 14 could be read as being a broader ban that doesn't even allow approval with the probation officer? I think the government's view is that that still wouldn't reach the level of plain error. I think that to be plain error, it would have to be clear that there's something illegal there rather than a potential ambiguity. But, I mean, if you're relying on an interpretation that allows probation officer approval as your way out of it being illegal, why wouldn't we just clarify that? Is there any problem with clarifying? I don't think that there's a problem with clarifying, but I don't think it's plain error, and that's why the government's position is it should be affirmed. No further questions. We have you over your time. Thank you.  The expansion took place at the level of the commentary, but as you pointed out, Judge Freeland, it went directly to the guideline itself. So the expansion was of the guideline, even though it took place at the level of commentary, it expanded the scope of the guideline. The Murrell case, the issue we're talking about was not raised and not decided in the Murrell case. It's not pertinent here. The reference to this language having been a response to a congressional directive is something that Mr. Boyd has stressed. I would point to this Court's Kareliuk opinion, which is in the briefs, footnote 7. The government argues we should ignore these concerns, similar concerns, because the commission was only responding to a congressional directive. The Court says we're not creating an exception to the requirements of Stinson based on there being a congressional directive. If the commission wants to make substantive policy amendments to a guideline, as it did here, it cannot do it in the commentary. It must do it in the guideline itself, regardless of whether it was responding to a congressional directive. So if Congress says do X, commission does X, they have to do it in the guideline, not in the commentary. As far as the concern about is this a two-part, is two arguments or one? I may have muddled it, but it's one argument. The argument is the plain language of the unambiguous language of the guideline says the minor, there is no minor, that guideline does not apply, and the fact that the commission tried to substantively change that in the commentary, as happened in Castillo, this Court said that shows the commission did not think the guideline itself covered that. But the statute also uses the word minor, right? Let's take a look at the statute, Your Honor. This is 2422. It says per individual who has not attained the age of 18 years. Okay. And then there is an attempt language. And that may be even plainer. I mean, this is a statute that has the definition. That would be a minor, but it actually says a person who hasn't attained the age of 18. We don't have anybody here who attained the age of 18. Why wouldn't we interpret the guideline to be consistent with the statute under which your client was convicted and to which you do not challenge the conviction? Because all these cases that I'm referring to, Castillo, Kyrilliok, et cetera, they draw important distinctions between statutes and guidelines, because guidelines are creatures of the sentencing commission, which is a unique body within the federal government. It's subject to constraints on its authorities, and the way it can enact substantive policy changes has to take place through the guidelines themselves, with congressional approval. These are not principles that apply to a statute, which comes directly from the mouth of Congress. And because this Court has addressed the issue that you're positing and decided that, what we're discussing today is an open question about the effect of this guideline in a case of this nature with no actual minor. If we disagree with you about the enhancement issue, but we think some of the supervised release conditions need to be corrected, would the remand be only on the supervised release? I think the answer would be yes. The only hesitation I have is that it's potentially the changing the supervised release could end up having a spillover effect on the sentence, the underlying sentence. However, this is not to release term, but release specific release conditions, so probably that wouldn't be necessary. Thank you. Thank you both sides for the helpful arguments. This case is submitted. Good argument.
judges: HAWKINS, BYBEE, FRIEDLAND